## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MICHELLE A. NYHUS-DELL,**

                **Plaintiff,**                **CIVIL ACTION NO. 18-cv-10132**

           **v.**                       **DISTRICT JUDGE DAVID M. LAWSON**

**COMMISSIONER OF**              **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

                **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Michelle A. Nyhus-Dell seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 9) and Defendant's Motion for Summary Judgment (docket no. 12).  Plaintiff has also filed a Reply to Defendant's Motion for Summary Judgment. (Docket no. 13.)   The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.    RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 9) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 12) be **GRANTED**.

## II.     PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on June 23, 2014, alleging that she has been disabled since June 7, 2012, due to right shoulder atrophy, "neck neuropathy and cervical spine," arthritis, "CA 3 and 4 cervix HXOF," asthma, sinusitis, "BL DM obesity," anxiety, and gastroesophageal reflux disease (GERD).  (TR 86, 153-59, 188.)  The Social Security Administration denied Plaintiff's claims on October 2, 2014, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ).  (TR 86-96, 101.)  On July 21, 2016, Plaintiff appeared with a representative and testified at a hearing before ALJ Sarah Zimmerman.  (TR 39-85.)   The ALJ subsequently issued an unfavorable decision on December 22, 2016, and the Appeals Council declined to review the ALJ's decision.  (TR 1-6, 18-33.) Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 9 at 8-14) and the ALJ (TR 21-22, 24-30, 31-32) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony.  Defendant set forth a short paragraph of facts and otherwise adopts the ALJ's recitation of the facts.  (Docket no. 12 at 6-7.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between Plaintiff's and the ALJ's recitations of the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 7, 2012, and that Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine and glenohumeral joint arthritis in the right shoulder.  (TR 20.)  The ALJ also found that Plaintiff's asthma, GERD, right knee status post arthroscopy, left shoulder osteoarthritis, and anxiety did not rise to the level of severe impairments, either singly or in combination.  (TR 20-22.)  Additionally, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 23.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a).  She is able to lift and/or carry no more than 10 pounds at a time.  She may frequently lift and/or carry articles such as docket files, ledgers, and small tools.  She can stand and/or walk for up to six hours and sit for up to six hours during an eight-hour workday.  She should have the option to change position every 30 to 45 minutes, for approximately five minutes, while remaining on task.  The claimant can frequently push and/or pull with the bilateral upper extremities.  She can occasionally reach overhead with the bilateral upper extremities.  She can frequently climb ramps and stairs, but may never climb ladders, ropes, or scaffolds.  The claimant can frequently balance and occasionally stoop and kneel but never crouch or crawl.  She can occasionally be exposed to wetness, but never in excessive amounts.  She can never be exposed to dangerous machinery or hazardous heights.  She should never be exposed to excessive vibration.

(TR 23-30.)  Subsequently, in reliance on a vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing her past relevant work as well as a significant number of other jobs in the national economy.  (TR 30-32.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from June 7, 2012, through the date of the decision.  (TR 18, 32-33.)

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the

4

conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner]

(a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this case should be reversed or remanded pursuant to sentence four because (1) "[t]he ALJ's finding that [Plaintiff] can perform anything other than unskilled work is not supported by substantial evidence[,] as the ALJ failed to properly consider the side effects from the Plaintiff's medications and the effects of pain and other symptoms on her ability to work;" (2) "[t]he ALJ's credibility analysis is flawed;" and (3) "[t]he ALJ's finding that the Plaintiff could perform her past relevant work is not supported by substantial evidence," and the ALJ's analysis in support thereof is contrary to the Social Security Administration's (SSA's) regulations.  (*Id*. at 3, 6, 17-25.)

        1.     *The ALJ's Consideration of the Effects of Plaintiff's Medications and Pain*

Plaintiff argues that the ALJ's RFC assessment that Plaintiff could perform a limited range of sedentary skilled and semi-skilled work is not supported by substantial evidence because "[t]he ALJ failed to even discuss, much less consider, the side effects from the Plaintiff's many medications on her ability to work."  (Docket no. 9 at 17.)  "The Sixth Circuit has held that the ALJ must evaluate '[t]he type, dosage, effectiveness, and side effects of any medication' as part

of the process of determining the extent to which side effects impair a claimant's capacity to work." *Morin v. Comm'r of Soc. Sec.*, 259 F. Supp. 3d 678, 683 (E.D. Mich. 2017) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi))).  A claimant's subjective "allegations of [a] medication's side-effects must be supported by objective medical evidence." *Farhat v. Sec'y of Health & Human Servs.*, 972 F.2d 347 (Table), 1992 WL 174540, at *3 (6th Cir. 1992).

Plaintiff argues that her hearing testimony and medical records indicate that the side effects of her medications would limit her to unskilled work.  (Docket no. 9 at 19-20.)  For example, at the administrative hearing, Plaintiff testified that she was taking several medications, including Norco and Neurontin for pain.  (TR 59-60.)  She testified that her medications cause sleepiness, dizziness, constipation, and nausea.  (TR 60-61.)  She also testified that she has problems concentrating and focusing at times.  (TR 61.)  Contrary to Plaintiff's assertion that the ALJ "failed to even discuss, much less consider," the side effects of her medications, the ALJ explicitly acknowledged Plaintiff's testimony that her medications cause dizziness and nausea in the decision.  (TR 24.)

In further support of her argument, Plaintiff cites a treatment record from an August 20, 2013 appointment with Scott Strom, DO, at which she indicated that the Neurontin (Gabapentin) made her want to sleep all the time and gave her bad nightmares.[1]  (Docket no. 9 at 19 (citing TR 398).)  At that appointment, she asked to reduce her dosage of Neurontin due to daytime somnolence.  (*Id.*)  The record reflects that Dr. Strom reduced Plaintiff's dosage of Neurontin from 300 mg to 100 mg accordingly.  (*See* TR 398-99, 400-01.)  Plaintiff's request for a reduction in

---

[1] Plaintiff also cites treatment notes reflecting that some of her medications caused constipation and upset stomach. (Docket no. 9 at 19 (citing TR 402, 417).)  Plaintiff, however, does not explain how these side effects relate to the skill level of her RFC, and their relevance thereto is not apparent.

dosage appears in subsequent treatment records dated November 19, 2013 and April 8, 2014, but the request appears to be carried over from Plaintiff's August 20, 2013 treatment record as part of Plaintiff's medication history. Notably, after August 20, 2013, Plaintiff's prescribed dosage of Neurontin remained the same, and there is no indication in the medical record that Plaintiff experienced any further side effects. (TR 393-94, 396-97.)

In fact, as Defendant points out, Plaintiff explicitly denied pain medication side effects to her treatment providers on several occasions, *e.g.*, July 20, 2012 (TR 311-12), September 20, 2012 (TR 316-17), September 30, 2012 (TR 366-67), December 18, 2012 (TR 321), December 29, 2012 (TR 322), March 18, 2013 (TR 327), April 18, 2013 (TR 333), July 16, 2013 (TR 339-40), and January 20, 2014 (TR 345). (*See* docket no. 12 at 8.) Thus, Plaintiff's alleged side effects are not supported by the objective medical evidence. Where, as here, a claimant testifies that she experiences medication side effects, but the medical records make no indication that she reported medication side effects to her physicians, an ALJ does not err in finding that the claimant suffered no adverse side effects from her medications. *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665-66 (6th Cir. 2004) (citing *Steiner v. Sec'y of Health and Human Servs.,* 859 F.2d 1228, 1231 (6th Cir. 1987)). Accordingly, the ALJ did not err in her consideration of Plaintiff's medication side effects.

Plaintiff also argues that the ALJ failed to consider the limiting effects of her pain. In support, Plaintiff cites her testimony that she had daily problems concentrating and focusing. (Docket no. 9 at 19 (citing TR 61).) She also points out that the state-agency psychologist, Ron Marshall, Ph.D., opined that Plaintiff's "[p]ain may affect concentration." (*Id.* (citing TR 91).) The ALJ acknowledged Dr. Marshall's opinion, characterized it as "somewhat speculative," and discounted it as inconsistent with the opinion of Plaintiff's orthopedic surgeon, who opined that

Plaintiff's symptoms were not severe enough to interfere with the attention and concentration needed to perform simple work tasks.  (TR 27 (citing 986).)  The ALJ did not err by deferring to the opinion of Plaintiff's surgeon regarding the effects of Plaintiff's pain.

Plaintiff further argues in this portion of her brief that the ALJ failed to consider the finding of state-agency physician, Robert Nelson, M.D., that Plaintiff was limited to unskilled work due to her impairments.  (Docket no. 9 at 19 (citing TR 95).)  This opinion, however, was not rendered by Dr. Nelson; it was rendered by a single decisionmaker (SDM), Adam Lindbloom.  (TR 95-96.)  The single decisionmaker model is an experimental modification to the disability determination process used by the Social Security Administration in which a State agency employee or Federal employee is responsible for making the initial disability determination "after any appropriate consultation with a medical or psychological consultant."  20 C.F.R. § 404.906.  Any findings made by an SDM are not to be used as opinion evidence at the appellate level, since SDMs, as laypersons, are not acceptable medical sources or non-medical sources of opinion evidence under 20 C.F.R. § 404.1513, § 404.1527(a)(2), or SSR 06–[0]3p.  *See White v. Comm'r of Soc. Sec.*, No. 12-cv-12833, 2013 WL 4414727, at *8 (E.D. Mich. Aug. 14, 2013) *and Maynard v. Astrue,* No. 11–12221, 2012 WL 5471150, at *6 (E.D. Mich. Nov. 9, 2012).  Notably, the SSA's Program Operations Manual advises that it must be clear to the appeal-level adjudicator whether the Physical Residual Functional Capacity form was completed by an SDM or a medical consultant because "SDM-completed forms are not opinion evidence at the appeal levels."  POMS DI 24510.050C.V.  "Accordingly, under the regulations and agency policy, SDM assessments have no place in an ALJ's disability determination."  *White,* 2013 WL 4414727, at *8.  The ALJ therefore did not err by failing to consider Mr. Lindbloom's opinion regarding unskilled work, and Plaintiff's Motion should be denied with regard to this issue.

2.      *The ALJ's Assessment of Plaintiff's Statements Concerning the Intensity, Persistence, and Limiting Effects of her Symptoms*

Next, Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility when discussing Plaintiff's activities of daily living.  (Docket no. 9 at 21-23.)  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  But these assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's evaluation of an individual's symptoms must contain "specific reasons . . . be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at * 9 (S.S.A. Mar. 16, 2016).  "It is not sufficient . . . to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'"  *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."   20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken

to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

In this case, the ALJ considered and discussed Plaintiff's hearing testimony and her other subjective complaints in conjunction with the record evidence, and the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (TR 24.) With regard to Plaintiff's activities of daily living, the ALJ reasoned:

> The claimant described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. The claimant has minimal problems with personal care. She is able to prepare simple meals, do light cleaning, dust, do laundry, wash dishes, and water her plants. She is able to drive and shop in stores. The claimant enjoys doing arts and crafts, sewing, gardening, watching movies, and looking at family history. She regularly visits with friends and family. (Ex. 5E). The claimant testified she does stretches in the mornings and does aerobic swimming exercises two to three times a week. She walks regularly. The claimant's reported activities of daily living are consistent with the residual functional capacity set forth herein.

(TR 27.)

Plaintiff argues that the ALJ mischaracterized her daily activities and failed to consider the effects of those activities coextensive with their performance. (Docket no. 9 at 21-23 (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007).) In *Rogers*, the Sixth Circuit held that the ALJ failed to properly evaluate the claimant's credibility because each of the reasons given by the ALJ for discounting the (fibromyalgia) claimant's subjective complaints was either improper, insufficient, or incorrect. 486 F.3d at 248-49. Specifically, the Sixth Circuit held that the ALJ (1) inappropriately focused on the lack of objective medical evidence to support the claimant's statements, because objective evidence is generally lacking for fibromyalgia claimants

due to the nature of fibromyalgia itself; (2) mischaracterized the claimant's testimony regarding the scope of her daily activities and failed to examine the physical effects of those activities coextensive with their performance; and (3) placed improper significance on the claimant's physician's testimony that the best treatment for fibromyalgia is regular exercise, because the fact that a claimant is encouraged to remain active does not reflect the manner in which the exercise may aggravate the claimant's symptoms. *Id.*

Plaintiff cites several portions of her hearing testimony to show that the ALJ mischaracterized and/or failed to discuss the effects of her activities. Plaintiff asserts that she testified that she exercises, swims, and walks as part of a treatment regimen that is necessary to maintain her current level of functioning. (Docket no. 9 at 22 (citing TR 53).) Plaintiff also points out her testimony that she walks about a quarter mile during which she starts to limp and gets sharp pains that shoot into her groin, and after which she has to take medication and either lie down or recline. (*Id.* (citing TR 53).) Plaintiff also relies on her testimony that she only does crafts once every other week and not for very long, she isn't able to sew for very long, the extent of her gardening is picking petals off the flowers, she watches movies at home but can't sit through an entire movie, and she only researches her family history a couple times a week for 15 to 20 minutes at a time. (*Id.* at 22-23 (citing TR 54-55).)

First, the undersigned notes that Plaintiff describes some of her hearing testimony in more restrictive terms than what was actually stated. Specifically, with regard to her exercise activity, Plaintiff actually testified that her swimming aerobic exercise program is pool therapy, which helps her "maintain things." (TR 53.) And as far as gardening, Plaintiff did not testify that she was able to only pick petals off flowers, she testified that she tried a little bit of gardening, that her daughter

and granddaughter helped her garden, and that her most recent gardening activity consisted of plucking petals off flowers. (TR 54.)

Having reviewed Plaintiff's testimony and subjective statements regarding her activities of daily living in conjunction with the ALJ's description thereof, the undersigned finds that the ALJ did not necessarily mischaracterize Plaintiff's activities of daily living in her decision. Rather, the ALJ discussed Plaintiff's activities in a very general sense, and she did not explicitly discuss the qualified nature and scope or physical effects of those activities. "[I]t is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)). However, *Rogers* requires at least a more complete discussion of a claimant's daily activities than that provided by the ALJ in this case, especially where an ALJ has provided no other valid reasons for discounting a claimant's subjective complaints. *See* 486 F.3d at 248-49. Thus, had the ALJ's assessment of Plaintiff's activities of daily living been the only basis on which she discounted Plaintiff's testimony and other subjective statements of disabling symptoms, remand for further consideration and discussion of those activities would have been warranted.

Here, however, the ALJ did not rely solely on Plaintiff's ability to perform daily activities in determining that Plaintiff is not disabled or in finding that Plaintiff's allegations were not entirely credible. Here, the ALJ considered Plaintiff's disabling allegations in conjunction with the objective medical evidence, the medical opinion evidence, and the other regulatory factors, and, unlike the ALJ in *Rogers*, the ALJ set forth valid reasons for discounting Plaintiff's allegations as inconsistent with the evidence and diagnostic findings.

For example, the ALJ acknowledged Plaintiff's allegations of balance problems, uneven gait, painful and slow movements, problems with lifting, bending, standing, reaching, walking, and sitting, and stiff and swollen hands and fingers.  (TR 24.)  The ALJ then found these allegations to be inconsistent with the diagnostic examination findings, which demonstrated that Plaintiff was able to heel and toe walk, perform finger-to-nose and rapid alternating finger movements, and sit, stand, and move about without difficulty and that Plaintiff's gait and stance were generally within normal limits, although her gait was antalgic at times.  (TR 26.)  The ALJ also pointed out that there was no objective evidence that Plaintiff had any handling or fingering issues, because the objective examinations consistently showed intact finger dexterity.  (TR 27.)  The ALJ also discounted Plaintiff's allegations of decreased concentration and memory problems by referring to her discussion regarding the same at step three of the sequential evaluation process, in which the ALJ noted that Plaintiff was able to handle her finances, drive a car, and take her medication and handle her personal care without reminders.  (*See* TR 22, 24, 27.)  The ALJ also relied on Plaintiff's own statements that she could pay attention for as long as needed, finish what she started, and follow instructions well.  (TR 22.)

Regarding the medical opinion evidence, as discussed above, the ALJ reasoned that Plaintiff's surgeon's opinion was inconsistent with the alleged concentration deficits.  (TR 27.) The ALJ also noted that the RFC assessments made by the state-agency sources supported a finding of not disabled, where Dr. Nelson opined that Plaintiff was capable of a limited range of light work, and Dr. Marshall opined that Plaintiff's mental impairments were not severe.  (TR 27.)

With regard to the regulatory factors, the ALJ discussed the location and intensity of Plaintiff's neck pain, noting that Plaintiff described it as burning pain that radiated into her right arm and caused numbness in her left hand.  (TR 24.)  The ALJ noted that Plaintiff took Norco,

Flexeril, and Gabapentin for her pain and acknowledged Plaintiff's assertions that her medications caused dizziness and nausea.  (TR 24, 26.)   Additionally, the ALJ discussed several of the procedures that Plaintiff underwent to relieve her symptoms, such as the anterior cervical discectomy for decompression and interbody fusion on July 6, 2012, and the removal of a pseudoarthrosis at the C6-7 level with a vertebral corpectomy of C6 and C7 on March 5, 2015.  (TR 25-26.)   The ALJ also noted that Plaintiff participated in physical therapy for her right shoulder and cervical spine and that she received Synvisc injections for her right shoulder, both of which provided some improvement.  (TR 26.)

 The above discussion demonstrates that the ALJ applied the factors set forth in 20 C.F.R. § 404.1529(c)(3) and set forth legitimate reasons for discrediting Plaintiff's hearing testimony and subjective complaints in her decision, which reasons are properly supported by the record evidence in accordance with SSR 16-3p.  Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court how she evaluated Plaintiff's symptoms.  The ALJ's assessment of Plaintiff's subjective complaints is supported by substantial evidence and should not be disturbed.

### 3. The ALJ's Step-Four Determination

At step four of the sequential evaluation process, the ALJ determined that Plaintiff was capable of performing her past relevant work as an admitting clerk.  (TR 30-31.)  Plaintiff argues that the ALJ committed reversible error by failing to provide specific findings or analysis regarding the mental demands of her past relevant work, as required by SSR 82-62.  (Docket no. 9 at 23-24.) "At Step Four, a three-prong test must be met in order to find that a claimant can return to his past relevant work: '(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job.'" *Hairston v. Comm'r of Soc. Sec.*, No. 11-10293, 2012 WL

917716, at *5 (E.D. Mich. Jan. 25, 2012) (citing SSR 82-62, 1975-1982 Soc. Sec. Rep. Serv. 809, 1982 WL 31386, at *4 (S.S.A. 1982)).

Here, the ALJ relied on the VE's testimony in finding that Plaintiff's past relevant work as an admitting clerk was a semi-skilled job with a Specific Vocational Preparation (SVP) rating of 4, which requires three to six months of training and experience to learn how to perform the job and to reach an average performance level.  (TR 31.)  The ALJ also relied on the VE's testimony in finding that the admitting clerk position required general clerical skills such as answering phones, taking messages, computer skills, and record keeping and that it was generally performed at the sedentary level in the national economy.  (TR 31.)  The ALJ then compared Plaintiff's RFC with the physical and mental demands of an admitting clerk and found that Plaintiff was able to perform that job as generally performed.  (TR 31.)  The ALJ properly made the three findings of fact required by SSR 82-62 in finding that Plaintiff was able to perform her past relevant work. There is no error here.

Plaintiff cites a specific excerpt of SSR 82-62, which provides that "for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety . . . in order to determine if the claimant's mental impairment is compatible with the performance of such work."  (Docket no. 9 at 23-24 (citing SSR 82-62, 1982 WL 31386, at *3).)  While the ALJ determined that Plaintiff's anxiety constituted a non-severe impairment, Plaintiff makes no argument regarding how her anxiety affects her ability to perform her past relevant work.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and

internal quotation marks omitted). Moreover, Plaintiff seemingly argues elsewhere in her brief that it is her pain and medication side effects, not her mental limitations and impairments, that prevent her from performing skilled or semi-skilled work. (*See* docket no. 9 at 20.) Thus, this excerpt of SSR 82-62 is not applicable in this case.

To the extent that Plaintiff argues that her medication side effects prevent her from performing her past relevant work, she does so in conclusory fashion and generally references her previous arguments. (*See* docket no. 9 at 24.) Those arguments have been thoroughly addressed in section 1 above, and Plaintiff has provided no other basis for reversal or remand in this regard. Plaintiff bears the burden of proving that she is unable to perform her past relevant work. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Her*, 203 F.3d at 391. She has not met that burden. Even if Plaintiff had met that burden, any error committed by the ALJ at step four would be harmless, as the ALJ made alternate step-five findings that Plaintiff was able to perform other jobs existing in significant numbers in the national economy.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 9) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 12).

## <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 5, 2019          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: February 5, 2019          s/ Leanne Hosking
                                 Case Manager